whole of the estate which upon the death of William McMullen, passed to his widow, Eliza McMullen, upon the death of the latter, descended to and vested in her brothers and sisters, and the legal representatives of her brothers and sisters.

It is conceded by counsel for the Butcher heirs, that if Lucretia Thomas had never had a brother or sister, they would not be entitled to an interest in the real estate, but at her death it would all pass to and vest in her husband, William H. Thomas, but that, as I have before stated, they inherited the undivided one half of said real estate through William Butcher, Jr., brother of Lucretia. as his personal representatives within the meaning of sec. 4162.

The case then turns upon the construction of the statute and the term, legal representatives, as therein used

Sec. 4162 provides as follows: "When the relict of a deceased husband or wife shall die intestate and without issue, possessed of an estate or personal property which came to such intestate from a former deceased husband or wife by deed or gift, devise or bequest, or under the provisions of sec. 4159, then such estate, real and personal, shall pass to and vest in the children of said deceased husband or wife, or the legal representatives of such children. If there are no children or their legal representatives living, then such estate, real and personal, shall pass and descend, one-half to the brothers and sisters of such intestate, or their legal representatives, and one half to the brothers and sisters of such deceased husband or wife, from which such personal or real estate came, or their personal representatives"

Perhaps there is no term used in the language of the law that is more indefinite in its application than the term "legal representatives." It has been used to designate an administrator or executor, devisees and legatees, children, brothers, and sisters, and almost all degrees of relationship. To arrive at a proper construction of the term as it is used in sec. 4162, it will be necessary to consider this section in connection with sec. 4159, of which it is a supplementary act, and perhaps the other sections of the statutes relating to the descent and distribution of property.

In the first sub-division of sec. 1159, it is provided, that upon the death of the person seized of property, it shall descend to his children "and their legal representatives." The second sub-division provides for the descent of the property if there are no children. It is evident, therefore, that the term "legal representatives" in the first sub division, means the lineal descendants of the intestate's children for the next sub-division provides, that if there are no children or their legal representatives, the estate shall pass to and be vested in the husband or wife relict of such intestate. In this sub-division also, the term legal representatives, certainly means the lineal descendants of the children. The third sub

[COPYRIGHT, 1897, BY CARL G. JAHN.]

division provides for the disposition of the property if there are no children or relict; to the brothers and sisters of the intestate of the whole blood and their legal representatives, and so on throughout all of the sub division of this section.

I think there can be no question that the term legal representatives, as used in sec. 4159, mean the lineal descendants of those of different degrees of relationship mentioned in such section. And I think the same rule of construction should be applied to the term in sec. 4162, and when that section says that the estate shall pass and descend one-half to the brothers and sisters of such intestate or their legal representatives, the legal representatives, within the meaning of the statute, are the lineal descendants of such brothers and sisters and not the collateral relatives, such as uncles or cousins.

Sec. 4162 being a special provision applicable to a particular class of persons, and the Butcher heirs not being of the class provided for in that section, it follows that upon the death of Lucretia Thomas, the whole of the real estate passed to and vested in William H. Thomas, now deceased, and that the Butcher heirs are entitled to no interest therein, and that the plaintiff, as administrator of William H. Thomas, is entitled to an order of sale as prayed in his petition, as against all of the defendants, and a judgment may be entered accordingly.

J. R. Lytle, Attorney for Plaintiff.

McElroy & Carpenter, Attorneys for the Butcher Heirs.

---

(Clark County, O., Probate Court.)

IN RE ASSIGNMENT OF WM. D. LOWRY.

---

A person who performs labor on a farm by the month or by the day, under the direction and control of his employer, in the operation and management of his farm, is an operative within sec. 6355, Rev. Stats.

Where the relation of master and servant does not exist between employer and employed, the employee cannot be an operative within sec. 6355.

A blacksmith following an independent calling, shoeing horses, sharpening plows, etc., for and to be used by a farmer, is not an operative within sec. 6355, and is not entitled to preference in the distribution of the assets of an assignor.

ROCKEL, J.

E. Waldeck and J. P. Lohnes, creditors of D. Lowry, the assignor herein have filed their applications in this court, asking that the claims may be preferred claims under sec. 6355, Rev. Stats.

The assignee waived all matters of jurisdiction and entered his appearance herein and asked the direction of the court, and

that an order be made in preference to the payment of said claims.

Wm. D. Lowry, at the time of his assignment was a farmer, having under his management and control about 105 acres. The claimant, E. Waldeck, performed labor on the farm a part of the time by the day, always under the direction and control of the assignor. The labor performed being the usual and ordinary work of a farm laborer.

J. P. Lohnes, the other claimant, was a neighboring village blacksmith, and at his shop shod the assignor's horses, sharpened his plows, tightened his wagon tires, and repaired different farming utensils, which were necessary and used by the assignor in the conduct of his farm. Sec. 6355, provides:

"All taxes of every description assessed against the assignor, upon any personal property held by him before his assignment, shall be paid by the assignee or trustee out of the proceeds of the property assigned, in preference to any other claims against the assignor; and every person who shall have performed any labor as an operative in the services of the assignor, shall be entitled to receive out of the trust funds, before the payment of the general creditors, the full amount of the wages due to such person for such labor, performed within twelve months preceding the assignment, not exceeding three hundred dollars.

That part of said section providing "and every person who shall have performed any labor as an operative in the services of the assignor," will require consideration to determine whether the claimants herein, can fairly claim to come within its provisions.

Is their labor that of an operative in the services of the assignor, is the question at issue.

But three courts in Ohio have given consideration to this section to my knowledge.

The first was an unreported decision of the Common Pleas of Franklin county, which came into my possession while counsel in the case next herein referred to. In that case, the court gave a very strict construction to the law, and held that a clerk in the dry goods store of the assignor, was not an operative within the meaning of the statute, and was therefore not entitled to a performance over general creditors.

The next is the case of Akron Iron Co. v. Whitely, etc., 25 Bull., 203, from the Common Pleas of this county. There were a large number of claimants in this case who had performed service for the W. N. Whitley Reaper & Mower Manufacturing Company. Some had performed manual labor in the shop, others set up machines in the field, others were traveling salesmen, who sold machines, at times put them up in the field, and who also made contracts with local agents to sell the machines.

All these the court held in a elaborate and well reasoned opinion, were within the statute and were entitled to a preference. The Franklin county case is referred to as giving a narrow and limited construction to the statute.

In the Akron Iron Co. v. Whitely case, a veterinary Surgeon, who had attended the horses used in drays and delivery wagons of the Whitely Company, presented a claim but the court held his claim did not come within the statute, that his was professional labor, which was not included in the plane and labor as an operative in the service of the assignor."

The third case is Green v. Weller, 6 O. S. C., 351, where it was held that the secretary of an incorporated manufacturing company is not entitled to preference over the general creditors, although as such secretary he acted as manager, overseer and superintendent, and in so doing, performed manual labor in packing and shipping for the concern.

In each one of these cases the claimant performed different kind of labor, or stood in a different relation to their employees. And while therefore these decisions, strictly speaking, cannot conflict, yet they are not in entire accord. The first adopts a very strict construction, the second a very liberal, and the third neither so strict as the first, nor as liberal as the second.

The usual definition given to the word operative, is a "workman," "one employed to perform work for another," an "artisan," etc. Workman means a person who performs work for another, be it skilled or unskilled, manual or mental labor.

I have never taken any stock in the idea that the legislature by the use of the word in sec. 6355, meant to limit it to skilled labor, or in fact to any particular kind of labor. It seems to me that as used in the statute, it was not meant to exclude any kind of laborers, but as a broad term including every person who performs labor in the operation of his employer's business.

The man who follows the plow is just as much an operative to the farmer in the tillage of his land, as is the man who wields the hammer in a large manufacturing establishment. And in either case they are just as necessary to the operation of their employer's business, as if their labor was what is known as skilled labor. They are operative just as much as if they were skilled laborers. For what reason the legislature could mean to include in this word only skilled labor or labor in a manufacturing establishment, is not evident to me.

The object of the law unquestionably is to furnish protection to that class of laborers, who from their condition in life, can ill afford to lose their wages, and who from the nature of their service, know little of the financial condition of their masters, and even if they did know such financial condition, they are usually unable to assert and protect their rights. Their earnings are usually small and would not justify the employment of counsel to enforce their claims.

The law insures to him who earns his daily bread by the sweat of his brow, that when the days' work is done, the bread is

earned. And no act of the employer who has received the benefit of that work, can deprive him of the fruits of his labor.

The law is just and human and no hair-splitting should be used in its application.——And the court will therefore hold that a person who performs labor on a farm by the month or by the day, under the control and direction of the farmer in the operation and management of his farm, is an operative within sec. 6355, Rev. Stats.

As to the claim of the blacksmith, who shod the horses and sharpened the plows used by the assignor in the operation of his business of farming, being an operative within the meaning of sec. 6355, I cannot accede. It is not the kind of labor that excludes his claim, but the nature of his service. If the assignor in the management of his farm had needed a blacksmith and would have employed him, not to do any particular work or job, but to do all his work, under his direction and control, he might come within the law. In other words, in order to be included within the act, the relation of master and servant must exist between the employer and employee. The language of the statute is, "every person who shall have performed any labor as an operative in the service of the assignor."

If the person who performs the labor does so in pursuit of an independent calling, and does not while performing such labor, remain entirely under the control and direction of the person for whom the labor is performed, such person is not a servant and the relation of master and servant does not exist between him and his employer.

In the case at bar, the blacksmith was following an independent calling. He was at no time entirely under the control and direction of the assignor. He did work for whoever came. He not only shod the assignor's horses, but those of neighboring farmers.

The relation that existed between him and the assignor was that of bailor and bailee. He had his lien at common law and could have retained possession of the animal or article upon which the labor was performed, until he received his pay.

Having either carelessly or unintentional surrendered this right, the court should not now aid him with a doubtful, and as I think, wrong construction of the law.

The court therefore will hold that a blacksmith, following an independent calling, shoeing horses and sharpening plows, etc., used by farmers in the operation and conduct of his farm, is not an operative within sec. 6355, Rev. Stats., and not entitled to a preference in the distribution of the assets of an assignor.

H. W. Stafford, for Assignee.
O. H. Miller, for Claimants.